IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LIEF ERIKSON

    v.                                   Civil No. CCB-11-461

PILOT TRAVEL CENTERS, LLC, *et al.*

## MEMORANDUM

This suit arises from an incident at a Pilot Travel Center in Perryville, Maryland on the evening of January 18, 2009. Plaintiff Lief Erikson sustained serious injuries from a physical altercation that took place at an Exxon gas station on the premises of the Pilot Travel Center. Mr. Erikson has sued Pilot Travel Centers, LLC, Pilot Flying J, Pilot Oil Corporation, and Don Blenner (collectively "Pilot" or "Pilot Travel") in negligence, arguing that Pilot Travel breached its duty to maintain the security of the premises. Now pending before the court are the defendants' Motion for Summary Judgment and the defendants' Motion to Strike Plaintiff's Designation of Expert Witness. The matter has been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, Pilot Travel's Motion for Summary Judgment will be granted and the Motion to Strike Plaintiff's Designation of Expert Witness will be denied as moot. [1]

---

[1] Based on the defendants' disclosure in discovery that Pilot Travel Centers, LLC owns, operates, and maintains the Pilot Travel Center in Perryville, Maryland, Mr. Erikson does not contest summary judgment as to the other defendants named in the complaint. (Plaintiff's Opposition Memorandum, ECF No. 51, p. 3, n.1.) Therefore, the discussion in this memorandum pertains solely to the remaining defendant, Pilot Travel Centers, LLC.

**Background**

Mr. Erikson went to the Exxon gas station at the Pilot Travel Center in Perryville, Maryland around 8:00 pm on January 18, 2009. The Pilot travel plaza is a 24-hour retail operation adjacent to Route 95. In addition to the gas station, the travel plaza includes a fast food restaurant, showers, and ATM machines. The Exxon gas station is located about 25 to 30 feet from a Pilot convenience store. (Deposition of Lief Erikson, ECF 51-9, p. 176.)

According to Mr. Erikson, a vehicle with two unknown men approached him as he was pumping his gas that evening. The individuals began to antagonize Mr. Erikson and verbally threatened him. (Erikson Depo., ECF No. 51-7, p. 126.) After "mouthing off" at Mr. Erikson, both men exited the vehicle and walked toward Mr. Erikson. (*Id*., at 128, 131.) One of the men started to push Mr. Erikson, and then the men "pinned [him] in the center of [his] truck." (*Id.* at 135-36). Mr. Erikson has no recollection of the events from that point until the point he regained consciousness in an ambulance. (Erikson Depo., ECF No. 51-8, p. 141.)

The defendants assert, and Mr. Erikson does not contest, that no Pilot employee saw the altercation as it was taking place. According to Pilot Travel Center employee Walter Bowman, a female customer alerted him that she saw a man fall out of his pickup truck. (Deposition of Walter Bowman, ECF No. 48-5, p. 29.) Mr. Bowman then contacted the Pilot cashier, Kim Gobble, and told her to get the manager, Michelle Morgan. (*Id*. at 31-33.) Ms. Morgan's deposition testimony corroborates this account. Ms. Morgan stated that Ms. Gobble told her that "there was a customer outside who was having some trouble, stumbling around." (Deposition of Michelle Morgan, ECF No. 48-4, p. 44.) At Ms. Morgan's instruction, Ms. Gobble called 911. (Deposition of Kimberly Gobble, ECF No. 51-20, p. 68-69.) The paramedics arrived shortly thereafter. (Bowman Depo., ECF No. 48-5, p. 33.)

2

Mr. Erikson now seeks to recover for his injuries on a theory of negligence. Mr. Erikson argues that Pilot breached its duty to take reasonable steps to protect the safety of its customers. Mr. Erikson contends that Pilot owes him a duty of care because prior violent crimes that took place at the travel plaza rendered his injuries foreseeable. He asserts that the "risk of violent crime" at travel plazas is well-known and necessitates additional security measures by Pilot. (Plaintiff's Opposition Memorandum, ECF No. 51, p. 4.) Furthermore, Mr. Erikson contends that Pilot voluntarily assumed the duty of protecting its customers against third party criminal activity when it installed security cameras onsite and trained its staff on security precautions.[2] According to Mr. Erikson, Pilot is liable because it negligently performed its undertaking to render security services.

In their motion for summary judgment, the defendants dispute that they have a duty to protect customers from third-party criminal activity. The company acknowledges that under some circumstances, prior similar incidents of criminal activity on a site may create a duty for the business owner to eliminate conditions that contributed to the criminal activity. According to Pilot Travel, however, the two recorded incidents of criminal activity since 1996 – a robbery in April 2004 and the theft of truck mirrors in July 2005 – are insufficient in number and not sufficiently similar in kind to confer a duty to protect against third-party criminal activity. (Defendant's Answers to Interrogatories, ECF No. 48-2, No. 9.) Moreover, citing the Restatement (Second) of Torts § 323, Pilot Travel notes that in order to establish negligence under a theory of assumed liability, Mr. Erikson must – and cannot – demonstrate that Pilot's failure to exercise reasonable care in the provision of security services increased the risk of harm

---

[2] The record shows that the Pilot convenience store had security cameras pointing at locations within the store, although not at the gas pumps outside. (Morgan Depo., ECF No. 51-23, p. 74-76.) Furthermore, Pilot trains its employees on matters of basic safety and security. (Pilot Center Training Materials, ECF No. 51-25.)

to Mr. Erikson or that Mr. Erikson suffered because of his reliance on Pilot's security measures. Pilot also asserts that Mr. Erikson has failed to show that the alleged breach was the proximate cause of his injuries, even if a duty did exist. Finally, Pilot sets forth two affirmative defenses: contributory negligence by Mr. Erikson and assumption of the risk of injury by Mr. Erikson.

## Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

## Discussion

To recover for negligence, a plaintiff must establish: "a duty owed to [him], a breach of that duty, a causal connection between the breach and the injury, and damages." *Funk v. Taubman Co., Ltd.*, 102 F. Supp. 2d 308, 311-12 (D. Md. 2000).  Absent that showing, "there can be no liability in negligence and the defendant is entitled to judgment as a matter of law." *Id.* at 312.  Moreover, the existence of a legal duty is a legal question for determination by the court.  *See Corinaldi v. Columbia Courtyard, Inc.*, 162 Md. App. 207, 218 (2005) ("Whether a plaintiff has presented sufficient evidence of the elements of negligence is generally a question for the fact finder, but the existence of a legal duty is a question of law to be decided by the court.").

As a general rule, "there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the actor and the third person or between the actor and the person injured." *Veytsman v. New York Palace, Inc.*, 170 Md. App. 104, 114 (2006) (quoting *Ashburn v. Anne Arundel County*, 306 Md. 617, 628 (1986)); *see also Scott v. Watson,* 278 Md. 160, 166 (1976).  Otherwise stated, "[t]he duty to protect patrons against conduct of third parties does not exceed the general duty of care and duty to warn of hidden dangers." *Tucker v. KFC Nat. Mgmt. Co.*, 689 F. Supp. 560, 562 (D. Md. 1988) *aff'd*, 872 F.2d 419 (4th Cir. 1989).  It is well established in Maryland that a storekeeper is not an insurer of its customers' safety. *Moore v. Jimel, Inc.*, 147 Md. App. 336, 348-49 (2002).

Under certain circumstances, a business owner may be liable for third party criminal activity on its premises due to the foreseeability of that criminal activity. The Court of Appeals of Maryland has summarized three circumstances in which a business owner may have a duty to take reasonable steps to prevent criminal activity on its premises. The first is where an injured plaintiff's claim is "based on an asserted duty to eliminate conditions that contributed to the criminal activity, such as providing security personnel, lighting, locks, and the like." *Corinaldi*, 162 Md. App. at 223. In that situation, "the asserted duty [is] based on [the business owner's] knowledge of prior similar incidents." *Id.* The second circumstance relates to a business owner's knowledge "with respect to prior conduct of the *assailant* that allegedly made the assault foreseeable and preventable." *Id.* at 224 (emphasis in original). The final circumstance in which liability may exist for third party criminal activity is when a business owner "had knowledge of events occurring on the premises, prior to and leading up to the assault, which made imminent harm foreseeable." *Id.*

Here, Mr. Erikson seeks to prevail on the first theory of liability – that is, that Pilot Travel had a duty to protect him from third party criminal activity due to its knowledge of prior similar incidents at the travel plaza. The case law, however, does not support Mr. Erikson's allegations. The defendants have disclosed two incidents of criminal activity since 1996.[3] Specifically, a robbery occurred on April 25, 2004, in which an individual claiming to possess a gun demanded $100 from a Pilot cashier. (Defendant's Answers to Interrogatories, ECF No. 48-2, No. 9; Defendant's Reply Memorandum, ECF No. 52, p.2, n.3.) Then, on July 4, 2005, the exterior mirrors were stolen off a Pilot Travel Center truck. (*Id.*) In *Smith v. Dodge Plaza Ltd. Partnership*, 148 Md. App. 335 (2002), the Court of Special Appeals of Maryland rejected a claim similar to Mr. Erikson's. In that case, a victim of a stabbing at a nightclub sought to hold

---

[3] Mr. Erikson has not disputed Pilot Travel's account of the criminal activity on its premises.

the owner of the nightclub liable for her injuries on the theory that prior similar incidents of criminal activity imposed a duty to protect patrons from third party criminal activity. In that case, as in this one, there had been two incidents of criminal activity on the premises. The court found that the two instances of known criminal activity at the nightclub did not render the crime against the plaintiff foreseeable. In other words, the prior crimes were "legally insufficient, in and of themselves, to have put [the owner] on constructive notice of a danger to patrons of criminal injury within [the nightclub] beyond that normally encountered in urban society." *Id.* at 346.

In this case, the robbery and theft of truck mirrors are not sufficiently "similar in nature to the violent assault suffered by the plaintiff" to impose a duty on the defendant. *Id.* at 353. Moreover, it cannot be said that the physical injuries Mr. Erikson sustained were foreseeable by virtue of two incidents of criminal activity since 1996. To hold that Pilot Travel owed Mr. Erikson the duty to protect him from third party criminal acts on this basis "would place [Pilot Travel] perilously close to the position of insurer of [its] tenants' safety." *Moore*, 147 Md. App. at 346.[4]

Mr. Erikson argues in the alternative that Pilot "voluntarily assumed the duty" to provide security for its premises and should be held liable for failing to exercise that duty reasonably. Mr. Erikson bases his argument on Section 323 of the Restatement (Second) of Torts, also known as the "Good Samaritan Doctrine," which provides that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or

---

[4] Nor does the case law support Mr. Erikson's argument that being open 24 hours, being located on I-95, or the fact of an NFL playoff game that night, in the absence of any relevant prior incidents, require precautions above and beyond those already undertaken by Pilot.

(b) the harm is suffered because of the other's reliance upon the undertaking. Restatement (Second) of Torts § 323 (1965). Mr. Erikson cites no case law for the applicability of this Restatement provision, but in any event, he has not demonstrated either that: (1) Pilot's alleged failure to provide adequate security services *increased* his risk of harm, or (2) he suffered because of his *reliance* on Pilot's security services. To the contrary, Mr. Erikson's deposition testimony demonstrates that he had no knowledge or expectation that a security guard would be present at the Exxon station. He testified that in the 150 to 300 times he had patronized that Exxon station in the past, he had not noticed a security guard. (ECF 48-7, p. 75, 107-08.) He also stated that he "had no expectations one way or the other" about the presence of a security guard on the day of the attack, and that he simply "went there for the gas." (*Id.* at 108.) Under those circumstances, there is no basis for the court to find that Mr. Erikson suffered because of his reliance on Pilot's security measures as he contends. Moreover, there is no evidence to support the assertion that Pilot's allegedly inadequate security measures increased or exacerbated the risk of harm to Mr. Erikson.

Having found that Pilot had no duty to protect Mr. Erikson from third party criminal activity under the circumstances shown here, the court need not address the element of proximate cause or Pilot's affirmative defenses.

For all the above reasons, Pilot Travel's Motion for Summary Judgment will be granted. Pilot Travel's Motion to Strike Plaintiff's Designation of Expert Witness will be denied as moot. A separate Order follows.

June 20, 2012                              _____/s/_____
   Date                                    Catherine C. Blake
                                           United States District Judge